Slip Op. 11-31

**UNITED STATES COURT OF INTERNATIONAL TRADE**

CONSTANTINE N. POLITES,

    Plaintiff,

v.

UNITED STATES,

    Defendant,

and

THE AD HOC COALITION FOR FAIR PIPE IMPORTS FROM CHINA, & THE UNITED STEEL WORKERS,

    Defendant-Intervenors

Before: Pogue, Chief Judge
Court No. 09-00387

**OPINION AND ORDER**

[Commerce's scope determination remanded.]

Decided: March 23, 2011

    Peter S. Herrick, PA (Peter S. Herrick) for Constantine N. Polites;

    Tony West, Assistant Attorney General; Jeanne E. Davidson, Director; Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Michael D. Panzera and John J. Todor); Reid P. Swayze, of Counsel, Office of Chief Counsel for Import Administration, U.S. Department of Commerce, for the United States Department of Commerce;

    King & Spalding LLP (Gilbert B. Kaplan, Brian E. McGill, & Daniel L. Schneiderman) for Ad Hoc Coalition for Fair Pipe Imports from China, et al.;

    Schagrin Associates (Roger B. Schagrin) for United Steelworkers, et. al.

    **Pogue, Chief Judge**: This matter returns to court following a

Court No. 09-00387 Page 2

voluntary remand to the Department of Commerce ("the Department" or "Commerce") to define the exclusion for "finished scaffolding" in the antidumping and countervailing duty orders on circular welded carbon quality steel pipe from the People's Republic of China.[1] On remand, Commerce defined "finished scaffolding" as "[c]ompleted supported elevated platforms and their completed supporting structures," or "component parts that enter the United States unassembled as a 'kit.'" Final Results of Redetermination Pursuant to Voluntary Remand (Dep't Commerce August 26, 2010) at 2 ("Remand Results").

Seeking review of the remand determination, Plaintiff Constantine Polites[2] ("Plaintiff" or "Polites") challenges Commerce's definition of the "finished scaffolding" exception. This court has jurisdiction pursuant to 28 U.S.C. § 1581(c).

Because Commerce's definition renders the "finished

---

[1] See Circular Welded Carbon Quality Steel Pipe from the People's Republic of China, 73 Fed. Reg. 42,547 (Dep't Commerce July 22, 2008) (notice of antidumping duty order); and Circular Welded Carbon Quality Steel Pipe from the People's Republic of China, 73 Fed. Reg 42,545 (Dep't Commerce July 22, 2008) (notice of amended final affirmative countervailing duty determination and notice of Countervailing Duty Order); Circular Welded Carbon Quality Steel Pipe from the People's Republic of China, 73 Fed. Reg. 42,545 (Dep't Commerce July 22, 2008) (notice of amended final affirmative countervailing duty determination and notice of countervailing duty order) (collectively, "CWP Orders" or "Orders").

[2] Plaintiff filed the complaint under his own name, but has appeared in the administrative proceedings prior under the name of his company, Constantine N. Polites & Co.

scaffolding" exception mere surplusage, the court remands. After a brief review of relevant background, the agency's determination and the applicable standard of review, the court will explain its conclusion.

## BACKGROUND

Seeking to exclude his merchandise from the scope of the CWP Orders, Plaintiff, on February 5, 2009, requested that Commerce determine whether the steel pipes that he imports were barred from inclusion in the Orders under the exclusion for "finished scaffolding." Polites Req. for Scope Ruling, A-570-910 (February 3, 2009) Admin. R. Pub. Doc. 1 at 2. Polites defined his imported merchandise as "finished scaffold tube[s] without any fittings." Polites Resp. to Req. for Additional Information, A-570-910, (July 14, 2010) Admin. R. Pub. Doc. 3 at 2.[3]

Procedurally, when determining whether merchandise falls within the scope of an antidumping or countervailing duty order,

---

[3] The tubes require the addition of twist lock fittings and/or right angle couplers, both of which are also manufactured by Polites, before they can be used in scaffolding. See Polites Resp. to Petitioner's Letter of June 1, 2009, (June 8, 2009) Admin. R. Pub. Doc. 12 at 2. The parties do not dispute whether the size and chemical composition of the tubes that Polites imports fall within the scope of the CWP Order. The size of Polites's tubes fall within the specified diameter and wall thickness requirements, and the steel used to construct them is no more than 2% carbon, 1.8% manganese, and 2.25% silicon, by weight, which also places them within the scope of the Orders. See Remand Results at 14.

Court No. 09-00387                                          Page 4

Commerce engages in a three step process.[4] First, Commerce examines the language of the order at issue. If the terms of the order are dispositive, then the order governs. See Tak Fat Trading Co. v. United States, 396 F.3d 1378, 1383 (Fed.Cir. 2005) (The "predicate for the interpretive process is language in the order that is subject to interpretation").

Second, if the terms of the order are not dispositive, Commerce must then determine whether it can make a determination based upon the factors listed in 19 C.F.R. § 351.225(k)(1). 19 C.F.R. § 351.225(k). These factors are "the descriptions of the merchandise contained in the petition, the initial investigation, and the determinations [of Commerce] (including prior scope determinations) and the Commission." 19 C.F.R. § 351.225(k)(1). To be dispositive, the Section 351.225(k)(1) criteria "must be 'controlling' of the scope inquiry in the sense that they definitively answer the scope question." Sango Int'l v. United States, 484 F.3d 1371, 1379 (Fed. Cir. 2007).

If a Section 351.225(k)(1) analysis is not dispositive, Commerce then applies the five "Diversified Products" criteria as specified in 19 C.F.R. § 351.225(k)(2): 1) The physical characteristics of the product, 2) the expectations of the ultimate purchasers, 3) the ultimate use of the product, 4) the

---

[4] Here, Commerce determined that it need only apply up to two steps of the process and that the third step was unnecessary.

Court No. 09-00387                                                    Page 5

channels of trade in which the product is sold, and 5) the manner in which the product is advertised and displayed. See 19 C.F.R. § 351.225(k)(2); Diversified Prods. Corp. v. United States, 572 F.Supp. 883, 889 (CIT 1983).

In conducting a scope inquiry, "the scope of a final order may be clarified, [but] it can not be changed in a way contrary to its terms." Duferco Steel, Inc. v. United States, 296 F.3d 1087, 1097 (Fed. Cir. 2002) (quoting Smith Corona Corp. v. United States, 915 F.2d 683, 686 (Fed.Cir. 1990)).

Following this process in the matter at issue here, Commere turned first to the CWP Orders. The Orders state in part:

> [T]his order covers certain welded carbon quality steel pipes and tubes, of circular cross section . . . regardless of . . . surface finish, . . . end finish. . . or industry specification, [but] does not include . . . finished scaffolding. . . . [T]he product description, and not the Harmonized Tariff Schedule of the United States ("HTSUS") classification, is dispositive of whether merchandise imported into the United States falls within the scope of the order.

Circular Welded Carbon Quality Steel Pipe from the People's Republic of China, 73 Fed. Reg. 42,545 (Dep't Commerce July 22, 2008) (notice of amended final affirmative countervailing duty determination and notice of countervailing duty order).

Responding to Plaintiff's claim, Commerce initially found that Polites's pipes fell within the scope of the CWP Orders and therefore "finished scaffolding" need not be defined. Mem. Re. Antidumping and Countervailing Duty Orders on Circular Welded

<u>Carbon Quality Steel Pipe from the People's Republic of China: Final Scope Ruling on Certain Scaffolding Tubes of Constantine N. Polites & Co.</u>, A-570-910 (August 12, 2009), Admin. R. Pub. Doc. 15 at 10. Polites then brought this action seeking review of Commerce's determination.[5]

Before filing a response to Polites's complaint, Commerce requested a voluntary remand for the sole purpose of establishing a definition for "finished scaffolding." The court granted Commerce's remand request.

On remand, as noted above, Commerce defined "finished scaffolding"[6] to cover two items. The first definition,

---

[5] Defendant-Intervenors assert as a threshold issue that Plaintiff's claim is an untimely challenge to the scope definition established by Commerce's final determination and the CWP Orders. Def. Int. Br. at 13 (citing 19 U.S.C. § 1516a(a)(2)(A)(i)(II)). Defendant-Intervenors, however, misread the statute. 19 U.S.C. § 1516a(a)(2)(A)(i)(II) dictates when the court may review, among others, countervailing duty orders. Here, Polites asked for a scope determination to assess whether the CWP Orders cover the tubes it imports, a request which Defendant-Intervenors acknowledge is timely. Def. Int. Br. at 13. Scope determinations are governed by 19 U.S.C. § 1516a(a)(2)(A)(ii), which states that such a determination must be challenged within 30 days of the date of mailing. 19 U.S.C. § 1516a(a)(2)(A)(ii). Here, the scope determination was issued on August 12, 2009 and Polites timely filed its summons on September 12, 2009 (The date of mailing is not at issue because the scope determination was issued on August 12, 2009 and therefore could not have been mailed prior to that date.). Accordingly, Polites's summons filed on September 12, 2009 is timely. <u>See</u> 19 U.S.C. § 1516a(a)(2)(A)(ii).

[6] While the final CWP Orders do not include any language regarding pipes or tubes used for scaffolding, the petition explicitly addresses pipes used for scaffolding. Specifically, the petition states that "[p]ipe used for the production of

Court No. 09-00387                                                    Page 7

"completed supported elevated platforms and their completed supporting structures made of scaffolding tubes which are attached to each other by means of fittings, couplers, clamps, base plate, and/or other means," refers to actual, completed scaffolding structures.  See Remand Results at 2.  Commerce also defined "finished scaffolding" to include scaffolding kits which contain, at the time of importation, all the necessary components to assemble a scaffold.  Id.

### STANDARD OF REVIEW

Under its familiar standard of review, the court "shall hold unlawful any determination, finding, or conclusion found ... to be unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i); Koyo Seiko Co. v. United States, 20 F.3d 1160, 1164 (Fed.Cir. 1994).  On legal issues, the court grants

---

scaffolding (but not finished scaffolding) . . . are included within the scope of th[e] investigation."  Circular Welded Carbon Quality Steep Pipe from the People's Republic of China, 72 Fed. Reg. 36,663 (Dep't Commerce July 5, 2007) (initiation of antidumping duty investigation); Circular Welded Carbon Quality Steep Pipe from the People's Republic of China, 72 Fed. Reg. 36,668 (Dep't Commerce July 5, 2007) (notice of initiation of countervailing duty investigation) (collectively "the petition"). At Defendant-Intervenor's request, Commerce moved the parenthetical reference to "finished scaffolding" to the list of exclusions.  Remand Results at 11.  Concurrently, Commerce decided to omit all reference to end use from the final order and removed the language referring to "pipes used for scaffolding"; nonetheless, Commerce maintains that the intent of the petition was to include scaffolding pipes and tubes similar to those imported by Polites.  Remand Results at 11-12.

Court No. 09-00387                                                    Page 8

"significant deference" to Commerce's scope rulings. <u>Allegheny Bradford Corp. v. United States</u>, 342 F. Supp. 2d 1172, 1183 (CIT 2004). Nonetheless, the court will find a scope ruling not in accordance with law if the scope ruling "changes the scope of an order or interprets an order in a manner contrary to the order's terms." <u>Id.</u>; <u>see also</u> <u>Duferco Steel, Inc.</u>, 296 F.3d at 1089 ("Scope orders may be interpreted as including subject merchandise only if they contain language that specifically includes the subject merchandise or may be reasonably interpreted to include it").

On factual issues, substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." <u>Consol. Edison Co. v. N.L.R.B.</u>, 305 U.S. 197, 229 (1938). Commerce's factual conclusions in a scope ruling are not precluded from being supported by substantial evidence when two different conclusions may be drawn from the same evidence and need only be reasonable to be upheld. <u>See</u> <u>id.</u>; <u>Novosteel SA v. United States</u>, 128 F. Supp. 2d 720, 730 (CIT 2001).

## DISCUSSION

While Commerce has latitude in interpreting the CWP Orders, it may not render parts of the Order "mere surplusage." <u>Eckstrom Industries, Inc. v. United States</u>, 254 F.3d 1068, 1073 (Fed. Cir. 2001); <u>see also</u> <u>Duncan v. Walker</u>, 533 U.S. 167, 174 (2001) ("a statute ought, upon the whole, to be so construed that, if it can

be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant."); <u>Orlando Food Corp. v. United States</u>, 423 F. 3d 1318, 1324 (Fed Cir. 2005) (the rule against surplusage is a rebuttable presumption). Therefore, Commerce must, at the least, define the finished scaffolding exclusion such that it encompasses merchandise which may be imported into the United States and thus is potentially subject to the CWP Order.

Polites asserts that defining "finished scaffolding" as fully assembled scaffolding is unreasonable because merchandise fitting this description would be impractical to import into the United States. Pl.'s Comments on Dep't. Commerce's Determination ("Plaintiff's Comments"). Polites further contends that the petition and orders do not mention kits and therefore kits should not be included within the exclusion.[7] Polites Draft Remand Determination Comments, A-570-910 (August 9, 2010) Admin. R. Pub. Doc. 6 at 2 ("Polites Draft Remand Comments"). Polites's first argument is correct.

Commerce's first definition, fully assembled scaffolding, is unreasonable for the purposes of the CWP Order because nothing in

---

[7] Polites argues that the definition of "finished scaffolding" which encompasses "completed supported elevated platforms and their completed supporting structures" does not represent merchandise which is imported into the United States and therefore the definition must include "disassembled, finished scaffolding." Plaintiff's Comments at 2. Commerce argues correctly that such a definition is already encompassed within the definition of a "kit." Remand Results at 18.

the record demonstrates merchandise matching this definition is imported into the United States or is even possibly imported into the United States. Polites asserts that such merchandise could never be imported into the United States and Commerce does not disagree. See Remand Results at 17-18. Rather, both Commerce and Polites acknowledge that fully constructed scaffolding is merchandise that would be prohibitively expensive and impractical to import. Remand Results at 17; Polites Draft Remand Comments at 2.

It follows that, in the context of the CWP Orders, Commerce's literal definition of "finished scaffolding" renders the "finished scaffolding" exclusion mere surplusage. The terms of an antidumping and countervailing duty order are triggered when merchandise is imported into the United States. An exclusion from a scope determination must therefore encompass merchandise which is or may be imported into the United States in order to act as a meaningful exclusion; anything less renders the exclusion hollow and improperly changes the meaning of the exclusion in the CWP Orders. See Allegheny, 342 F.Supp.2d at 1183.

With regard to its second definition, Commerce asserts correctly that it has discretion to include scaffold kits in the definition of "finished scaffolding" even when such kits are not listed in the Petition. See Smith-Corona Group v. United States,

713 F.2d 1568, 1571 (Fed. Cir. 1983).  However, if Commerce is to include kits in the definition of "finished scaffolding," its decision must be supported by the record.  See Matsushita Elec. Indus. Co. v. United States, 750 F.2d 927, 933 (Fed. Cir. 1984).

Commerce argues that record evidence shows that scaffolding may be imported as a kit.  Remand Results at 18 ("record evidence indicates that 'finished scaffolding' may be sold as a kit, which . . . contains, at the time of importation, all of the necessary component parts to fully assemble a final, finished scaffolding").  However, the portions of the record that Commerce relies on merely show that scaffolding kits are sold within the United States.  See Request for Additional Information, A-570-910 (July 7, 2010) Admin. R. Pub. Doc. 3 at Attach. 5.  While Polites acknowledges that such kits could be considered finished scaffolding, Polites Resp. to Req. for Additional Information at 2, he also asserts that such kits have never been imported into the United States.  See Def. Resp. Br. at 15.  In response, Commerce simply states that there is a market in the United States for scaffolding kits and that nothing on the record shows that any or all scaffolding kits are manufactured domestically.  Id.

Commerce's assertion that scaffolding kits may be imported into the United States is not supported by substantial evidence because Commerce has failed to put forth any evidence

demonstrating that complete scaffolding kits are imported or are even possibly imported into the United States. Rather, Commerce simply makes the unsupported, conclusory determination that these kits are not only imported, but imported as complete kits with all the components necessary to build a scaffold. Remand Results at 18.

The evidence in the record consists of product descriptions extracted from four separate internet websites, each selling scaffolding kits. Request for Additional Information at Attach. 5. None of the pages from the four websites indicate the country of origin for the scaffolding kits. Absent any showing that scaffolding kits are or may be imported into the United States as complete kits, this definition of the "finished scaffolding" exclusion is also rendered mere surplusage. Commerce's definition of "finished scaffolding" must include merchandise that is at least potentially subject to the CWP Orders.[8] Indeed, the definition provided by Commerce refers to components that must be present "at the time of importation" in order to qualify for the exclusion.

Finally, the court finds that, in the context here, the

---

[8] Plaintiff raises additional arguments, including, among others, whether tariff classification and end use should factor into Commerce's consideration of whether the pipes it imports fall within the general scope of the CWP Orders. The court declines to address these arguments because the only issue currently before it is whether Commerce's definition of "finished scaffolding" is reasonable and supported by the record.

term, "finished scaffolding" may be ambiguous and therefore if Commerce is unable to obtain substantial evidence showing that scaffolding kits are or may be imported into the United States, the § 351.225(k)(2) factors must be taken into account. The term "finished scaffolding" first appeared in the petition, which stated that "pipe used for the production of scaffolding (but not finished scaffolding) . . . are included within the scope of th[e] investigation." <u>Circular Welded Carbon Quality Steep Pipe from the People's Republic of China</u>, 72 Fed. Reg. 36,663 (Dep't Commerce July 5, 2007) (initiation of antidumping duty investigation); <u>Circular Welded Carbon Quality Steep Pipe from the People's Republic of China</u>, 72 Fed. Reg. 36,668 (Dep't Commerce July 5, 2007) (notice of initiation of countervailing duty investigation). Commerce, apparently using the § 351.225(k)(1) factors in its analysis, attempts to support its definition of the exclusion by finding that the intent of the petition was to include scaffolding pipes similar to the merchandise imported by Polites. Remand Results at 11-12. However, Commerce's attempt to define the exclusion based on the § 351.225(k)(1) factors has resulted in a definition that renders the exclusion surplusage and is unsupported by substantial evidence. Absent substantial evidence showing that scaffolding kits are or may be imported into the United States, the (k)(1) factors are not dispositive and the term, "finished scaffolding"

Court No. 09-00387                                               Page 14

remains ambiguous. Therefore, the court remands this issue to Commerce so that it may 1) provide substantial evidence to support its assertion that "finished scaffolding" means scaffolding kits, or 2) progress to the next step of analysis and consider the § 351.225(k)(2) factors when determining the proper meaning of "finished scaffolding." See Sango, 484 F.3d at 1382 (holding that Commerce's definition using § 351.225(k)(1) criteria is unsupported by substantial evidence and therefore analysis using § 351.225(k)(2) criteria is required).

## Conclusion

Accordingly, Commerce's definition of "finished scaffolding" is remanded for further consideration in accordance with this opinion. Commerce shall have until May 9, 2011 to complete and file its remand determination. Plaintiffs shall have until May 23, 2011 to file comments. Defendant and Defendant-Intervenors shall have until June 6, 2011 to file any reply.

It is SO ORDERED.

/s/ Donald C. Pogue
Donald C. Pogue, Chief Judge

Dated:  March 23, 2011
        New York, NY