**SLIP OP 11-91**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

```
CONSTANTINE N. POLITES,

         Plaintiff,

      v.

UNITED STATES,
                                      Before: Pogue, Chief Judge
         Defendant,                   Court No. 09-00387

      and

THE AD HOC COALITION FOR FAIR
PIPE IMPORTS FROM CHINA, & THE
UNITED STEELWORKERS,

         Defendant-
         Intervenors
```

<u>**OPINION**</u>

[Department of Commerce's Remand Results are sustained]

Dated: July 28, 2011

<u>Peter S. Herrick</u>, PA (<u>Peter S. Herrick</u>) for Plaintiff Constantine N. Polites;

<u>Tony West</u>, Assistant Attorney General; <u>Jeanne E. Davidson</u>, Director; <u>Patricia M. McCarthy</u>, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (<u>Michael D. Panzera</u> and <u>John J. Todor</u>); <u>Reid P. Swayze</u>, of Counsel, Office of Chief Counsel for Import Administration, U.S. Department of Commerce, for the United States Department of Commerce;

<u>King & Spalding LLP</u> (<u>Gilbert B. Kaplan</u>, <u>Brian E. McGill</u>, & <u>Daniel L. Schneiderman</u>) for Defendant-Intervenors Ad Hoc Coalition for Fair Pipe Imports from China; and

<u>Schagrin Associates</u> (<u>Roger B. Schagrin</u>) for Defendant-Intervenors United Steelworkers

Court No. 09-00387                                                  Page 2

**Pogue, Chief Judge**:  This matter returns to court following remand in <u>Constantine N. Polites v. United States</u>, __ CIT __, 755 F. Supp. 2d 1352 (2011)("<u>Polites I</u>").  At issue is whether Plaintiff Polites's imports of steel tubes, intended for use as scaffolding, are exempt from countervailing and antidumping duties, under an exclusion for "finished scaffolding."[1]

On remand, the United States Department of Commerce ("Commerce" or the "Department") re-opened the record to obtain evidence in support of its claim that "finished scaffolding" refers to "scaffolding kits" that are or may be imported into the United States.  Polites now seeks review of Commerce's evidentiary determination.  The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2006).[2]

After a brief review of the relevant background and the applicable standard of review, the court will explain why it

---

[1] See <u>Circular Welded Carbon Quality Steel Pipe from the People's Republic of China</u>, 73 Fed. Reg. 42,547 (Dep't Commerce July 22, 2008) (notice of antidumping duty order); and <u>Circular Welded Carbon Quality Steel Pipe from the People's Republic of China</u>, 73 Fed. Reg 42,545 (Dep't Commerce July 22, 2008) (notice of amended final affirmative countervailing duty determination and notice of Countervailing Duty Order)(collectively, "CWP Orders" or "orders").

[2] Commerce issues the Final Results pursuant to Section 705 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1671d (2006). Further citation to the Tariff Act of 1930 is to Title 19 of the U.S. Code, 2006 edition.  In addition, of course, the court has jurisdiction to enforce its remand orders.  <u>Amanda Foods (Vietnam) Ltd. v. United States</u>, 2011 WL 1423125 at *3 (CIT Apr. 14, 2011)

concludes that Commerce's definition of "finished scaffolding" as scaffolding kits is a reasonable interpretation of the CWP Orders, and that Commerce's factual finding that such kits are or may be imported into the United States is supported by the record. Accordingly, Commerce's conclusion that Polites's scaffolding tubes are within the scope of the Orders must be sustained.

## BACKGROUND

This matter began with Plaintiff Constantine N. Polites's ("Plaintiff" or "Polites") request that Commerce issue a scope determination as to whether the steel tubes Polites imports are subject to countervailing and antidumping duties.[3] Polites Req. For Scope Ruling 2, A-570-910 (February 3, 2009), Admin. R. Pub. Doc. 1. Specifically, Polites urged Commerce to find that his steel pipes, which he claimed are used exclusively as scaffolding, are excluded from the scope of the Orders under the exemption for "finished scaffolding."

In its original scope determination,[4] Commerce provided two

---

[3] Plaintiff appeared in the administrative proceedings under the name of his company, Constantine N. Polites & Co., though he filed his complaint under his own name.

[4] Commerce obtained a voluntary remand of its first scope determination for the express purpose of defining "finished scaffolding." See Polites I, 755 F. Supp. 2d at 1353–54. For our purposes, the scope determination pursuant to this voluntary remand will be referred to as the original scope determination.

Court No. 09-00387                                               Page 4

definitions for "finished scaffolding:" 1) completed, fully assembled scaffolding, or 2) scaffolding kits.  <u>Final Results of Redetermination Pursuant to Voluntary Remand</u> 8-9, June 25, 2010, ECF No. 50 ("2010 Remand").

 Polites sought review of Commerce's definition, and the court held in <u>Polites I</u> that the first definition, which encompassed fully assembled scaffolding, was not in accordance with the law because it rendered the exclusion a nullity as there was no evidence which could demonstrate that fully assembled scaffolding was or could be imported into the United States.  The court also held there was no evidence on the record that scaffolding kits were or could be imported into the United States.  <u>Polites I</u>, 755 F. Supp. 2d at 1357-58.  Accordingly, the court remanded for Commerce to obtain evidence that scaffolding kits "are or may be imported into the United States" or, alternately, to consider the factors listed in  19 C.F.R. § 351.225(k)(2) when defining "finished scaffolding."  <u>Polites I</u>, 755 F. Supp. 2d at 1359.

 On remand, Commerce chose the first option and modified its definition of "finished scaffolding" to be "component parts of . . . final, finished scaffolding that enter the United States unassembled as a 'kit'" which is a "packaged combination of component parts that contains, at the time of importation, all of the necessary component parts to fully assemble a final, finished

Court No. 09-00387                                                Page 5

scaffolding."  Final Results of Redetermination Pursuant to Remand 9, Mar. 23, 2011, ECF No. 63 ("Remand Results").[5]

In addition, Commerce has placed evidence on the record which it claims establishes that scaffolding kits are or may be imported into the United States.  Commerce's evidence consists of 1) at least eight web-site excerpts from Chinese manufacturers offering scaffolding kits for sale and claiming the United States as a primary export market, 2) import data from ship manifests showing that Eternal Star International Industry Company Limited ("Eternal Star") imported scaffolding kits into the United States in 2009, and 3) a tariff classification ruling from the United States Customs and Border Protection in which the importer states its intention to import scaffolding rollers "both alone and with the complete unassembled steel scaffolding."[6]  Remand Results 5-7.  Commerce also asserts that evidence of "substantial entries" of Chinese origin goods, classified in the Harmonized Tariff Schedule of the United States ("HTSUS") category which includes scaffolding kits, establishes that scaffolding kits are or may be imported into the United States.  Remand Results 7-9.

---

[5] Commerce also removed fully assembled scaffolding from the "finished scaffolding" definition.  Remand Results 8–9.

[6] The Eternal Star evidence and the tariff classification ruling were among evidence submitted to the record by Defendant-Intervenors.  Commerce relied on and incorporated these two evidentiary submissions in its remand results.  Remand Results 7.

Consequently, Commerce continues to find that the steel tubes Polites imports meet the physical description of the merchandise covered by the Orders and do not fall under the "finished scaffolding" exemption.[7]  Remand Results 10-11.  While Commerce concedes that a scaffolding tube could be one component of a kit, it asserts that the Polites's tubes still fail to meet the definition of a "scaffolding kit" because they require the addition of other components after importation before they can be used as scaffolding.  See Remand Results 10.  Commerce therefore finds that the tubes Polites imports are subject to antidumping and countervailing duties.  See Remand Results 10-11.

## STANDARD OF REVIEW

The Department, in its remand redetermination must comply with the terms of the court's remand order.  See Amanda Foods (Vietnam) Ltd. v. United States, 2011 WL 1423125 at *3 (Apr. 14, 2011).  In addition, the court "shall hold unlawful any determination, finding, or conclusion found ... to be unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i); Koyo Seiko Co. v. United States, 20 F.3d 1160, 1164 (Fed.Cir. 1994).

---

[7] The parties do not dispute whether the size and chemical composition of the tubes that Polites imports fall within the scope of the CWP Orders.  The size of Polites's tubes falls within the specified diameter and wall thickness requirements, and the steel used to construct them is no more than 2% carbon, 1.8% manganese, and 2.25% silicon, by weight, which also places them within the scope of the Orders.  See 2010 Remand Results 14.

Substantial evidence is relevant evidence that, given the record as a whole, "a reasonable mind might accept as adequate to support a conclusion." Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938) (citations omitted). Commerce's factual conclusions in a scope ruling are not precluded from being supported by substantial evidence when two different conclusions may be drawn from the same evidence and need only be reasonable to be upheld. See id.; Novosteel SA v. United States, 25 CIT 2, 12, 128 F. Supp. 2d 720, 730 (2001).

## DISCUSSION

**Commerce's definition of "finished scaffolding."**

The primary issue here is whether the record supports Commerce's claim that scaffolding kits are or may be imported into the United States. Polites asserts that the court should disregard the lone "fugitive" sale of scaffolding kits to the United States which Commerce identified because the entry for the kit was not placed on record. Pl.'s Reply to the Department of Commerce's Final Results of Redetermination Pursuant to Remand 2, May 20, 2011, ECF No. 65 ("Polites Reply"). Polites also argues that Commerce has found multiple websites offering sales, but no substantial evidence that sales have actually taken place.

The evidence placed on the record, however, shows that scaffolding kits have been and may be imported into the United States. This evidence consists, in part, of 1) import data from

ship manifests showing that Eternal Star imported scaffolding kits from China into the United States in 2009, and 2) a tariff classification ruling wherein the importer states its intention to import scaffolding rollers "'both alone and with the complete unassembled steel scaffolding.'"[8]  Remand Results 5-7 (citing Def.-Int. Letter 2, April 6, 2011, ECF No. 64-4).

Polites argues that the Eternal Star evidence should be disregarded because the entry document for the scaffolding kit sale was not produced.[9]  Polites Reply 2.  However, there is nothing on the record to suggest that the ship manifests are inaccurate or misleading.  In the absence of any evidence showing irregularity in the ship manifests, Commerce's decision that the data contained therein is accurate and that Eternal Star did, indeed, bring scaffolding kits into the United States is reasonable.  See, e.g., 19 U.S.C. § 1431(b).[10]

As further evidence, Defendant-Intervenors provided a tariff

---

[8] Defendant-Intervenors submitted additional evidence in support of Commerce's argument that scaffolding kits are or may be imported into the United States.  Because Commerce did not rely on or incorporate this evidence into the remand results, the court will not address its sufficiency.

[9] The entry document referred to is the documentation required by Customs before imported merchandise will be released from Customs' custody.  See 19 C.F.R. § 141.0a(a).

[10] Commerce's directions on remand were to provide substantial evidence that scaffolding kits are or may be imported into the United States and this is evidence that at least one company brought scaffolding kits from China into the United States.

ruling in which the importer stated its intention to import scaffolding rollers with "complete unassembled steel scaffolding." Remand Results 7 (citing Def.-Int. Letter 2, April 6, 2011, ECF No. 64-4). The stated intent of an importer to import scaffolding kits supports the reasonable inference that scaffolding kits may be imported into the United States. See Consol. Edison, 305 U.S. at 229. Therefore, the tariff ruling provided by Defendant-Intervenors is further evidence that scaffolding kits are or may be imported into the United States.

Together, these two pieces of evidence support the conclusion that scaffolding kits have been imported in the past and that some importers at least intend to import scaffolding kits into the United States.[11] Commerce's definition of

---

[11] Commerce argues that web-page excerpts from Chinese companies claiming to export scaffolding kits primarily to the United States, support its assertion that scaffolding kits may be imported. See Remand Results 5-7. While it is possible that these companies produce and export scaffolding kits, the court need not decide whether copies from an internet web-site, put up to advertise and solicit business, are substantial evidence that scaffolding kits may be imported into the United States. There is, at the least, a possibility that the statements on these advertising web-sites, claiming the United States as a "primary export market," constitute mere puffery and not actual fact. See Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Service, Inc., 911 F.2d 242, 246 (9th Cir. 1990) (defining "puffing" as generalized advertising claims that cannot be relied upon).
   Commerce also claims that because scaffolding kits are classified under HTSUS 7308.40.00.00 and a "significant quantity" of Chinese products classified under this HTSUS number have been imported into the United States, there is substantial evidence that scaffolding kits are imported into the United States. Remand Results at 7-8. Commerce's reasoning is not entirely

"finished scaffolding" to incorporate scaffolding kits is therefore supported by the record.

**Polites's merchandise**

Although the parties do not contest whether the steel tubes imported by Polites fit the physical description of the merchandise covered by the Orders, see 2010 Remand Results 8–9. Polites makes several remaining arguments. None are availing.

First, Polites asserts that a change in wording, between the petition and the CWP Orders, demonstrates Commerce's intent to exclude his merchandise from the scope of the final Orders. The petition stated that "pipe used for the production of scaffolding . . . are included within the scope of this investigation." Circular Welded Carbon Quality Steel Pipe from the People's Republic of China, 72 Fed. Reg. 36,663 (Dep't Commerce July 5, 2007) (initiation of antidumping duty investigation); Circular Welded Carbon Quality Steel Pipe from the People's Republic of China, 72 Fed. Reg. 36,668 (Dep't

---

convincing. HTSUS 7308.40.00.00 is not limited to scaffolding kits, but rather, by its own definition, encompasses "equipment for scaffolding, shuttering, propping or pit-propping." Remand Results at 8 (citing HTSUS 7308.40.00.00). Commerce apparently ignores the other items classified under HTSUS 7308.40.00.00 and infers that all or most of the items imported under this classification code are scaffolding kits, despite the absence of evidence showing that these imports actually were scaffolding kits. The court need not address whether Commerce's inference is reasonable because it has already determined, based on other evidence, that the record supports Commerce's finding.

Commerce July 5, 2007) (notice of initiation of countervailing duty investigation). Polites argues that his merchandise is outside the scope of the CWP Orders because Commerce removed this language which would have otherwise incorporated his merchandise. Commerce responds that it removed the identified language because of its longstanding preference against relying on end-use in the CWP Orders.

Commerce's explanation is sufficient. While Polites notes correctly that countervailing duty and antidumping investigations are initiated by Commerce based on petitions filed by a domestic interested party, 19 C.F.R. § 351.202(a), Commerce is responsible for determining the language in the final order. See 19 C.F.R. § 351.211(a). When determining whether merchandise falls within the scope of an antidumping or countervailing duty order, Commerce first examines the language of the order. If the terms of the order are dispositive, then the order governs. See Tak Fat Trading Co. v. United States, 396 F.3d 1378, 1383 (Fed.Cir. 2005) (The "predicate for the interpretive process is language in the order that is subject to interpretation"). The petition and investigation may inform Commerce's determination, but "they cannot substitute for language in the order itself." Duferco Steel, Inc. v. United States, 296 F.3d 1087, 1097 (Fed. Cir. 2002).

In addition, here, Commerce stated in the notice of

investigation that it has a preference for relying on physical characteristics, as opposed to end-use, when determining the scope of product coverage. <u>Circular Welded Carbon Quality Steel Pipe from the People's Republic of China</u>, 72 Fed. Reg. 36,663 (Dep't Commerce July 5, 2007) (initiation of antidumping duty investigation); <u>Circular Welded Carbon Quality Steel Pipe from the People's Republic of China</u>, 72 Fed. Reg. 36,668 (Dep't Commerce July 5, 2007) (notice of initiation of countervailing duty investigation). Subsequently, Commerce modified the language in the final orders to reflect this preference, removing all reference to end-use. <u>See</u> Final Orders. This determination was not unreasonable; the language of the petition cannot prevail over the language in the final order.[12] <u>Duferco</u>, 296 F.3d at 1097.[13]

---

[12] Polites further contends that Commerce should take the factors listed in 19 C.F.R. § 351.225(k)(2), particularly end-use, into consideration. This argument is unavailing because consideration of the § 351.225(k)(2) factors is a last step that Commerce uses only if it cannot otherwise determine whether merchandise fits within the scope of an order. <u>See</u> 19 C.F.R. § 351.225(k)(2); <u>Diversified Prods. Corp. v. United States</u>, 6 CIT 155, 162, 572 F.Supp. 883, 889 (1983). Here, as the record contains substantial evidence supporting Commerce's definition of "finished scaffolding," the Department need not proceed to the § 351.225(k)(2) factors. <u>Id.</u>

[13] Polites finally asserts that his merchandise is properly classified under HTSUS 7308.40.00.00 along with scaffolding kits. However, as the court held in <u>Polites I</u>, the classification of Polites's merchandise is not currently before the court. <u>Polites I</u>, 755 F. Supp. 2d at 1358 n.8.

Court No. 09-00387                                                  Page 13

## Conclusion

For the reasons stated above, Commerce's final redetermination on remand is sustained.  Judgment will be entered accordingly.

                                                    /s/ Donald C. Pogue
                                                  Donald C. Pogue, Judge

Dated:   July 28, 2011
         New York, New York

SLIP OP 11-91

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| CONSTANTINE N. POLITES,<br><br>       Plaintiff,<br><br>       v.<br><br>UNITED STATES,<br><br>       Defendant,<br><br>       and<br><br>THE AD HOC COALITION FOR FAIR PIPE IMPORTS FROM CHINA, & THE UNITED STEELWORKERS,<br><br>       Defendant-<br>       Intervenors | Before: Pogue, Chief Judge<br>Court No. 09-00387 |

**JUDGMENT**

The court having heard and decided this matter, now in accordance with that opinion, Commerce's final redetermination on remand is sustained

                                                                         /s/ Donald C. Pogue
                                                                         Donald C. Pogue, Judge

Dated:    July 28, 2011
            New York, New York